IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

D. MARIA SCHMIDT, as the Personal Representative of the
Wrongful Death Estate of RUBEN GUERRA QUINONES,
Deceased,

    Plaintiff,

vs.                                                                                                        18cv321 KG/KBM

NAVISTAR, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Navistar, Inc.'s (Navistar) Amended Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, filed April 5, 2018. (Doc. 3). Plaintiff D. Maria Schmidt, as the Personal Representative of the Wrongful Death Estate of Ruben Guerra Quinones, Deceased (Schmidt), filed her Response on May 7, 2018, opposing the Motion, and, in the alternative, seeking limited jurisdictional discovery. (Doc. 17). Navistar filed its Reply on June 4, 2018. (Doc. 20). Schmidt subsequently filed two notices of supplemental authority, on August 7, 2018, and January 11, 2019, respectively. (Docs. 22, 23). Having considered the briefing, the record, and the applicable law, the Court denies Navistar's Amended Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3).

I.     Background and Procedural History

This lawsuit arises from the March 25, 2015, single-vehicle rollover and subsequent death of Ruben Guerra Quinones (Guerra), who was driving a 2009 International 9200i, "designed," "manufactured," "assembled and tested" by Navistar. (Doc. 4) at ¶¶ 6-10. Guerra is survived by his adult daughter, Ylzay Guerra Caballero (Cabellero), and two other children.

(Doc. 17) at 7.

Navistar registered to do business in the State of New Mexico and received authority to do business in New Mexico on January 24, 1966. (Doc. 17-11) (Navistar corporate information from the New Mexico Secretary of State). Navistar appears to have had a manufacturing or assembly plant in New Mexico at some point but has not had such a plant in New Mexico since before 2005. (Doc. 3) at 27 (Affidavit of Roy Zeitlow at ¶ 10).

Caballero filed a complaint against Navistar and Guerra's employer, Black River Trucking and Hotshop Services, LLC, on June 27, 2017, in the Fifth Judicial District Court for the State of New Mexico. (Doc. 3) at 29. Navistar filed a motion to dismiss for lack of personal jurisdiction, to which Caballero ultimately withdrew her objection. *Id.* at 41. The stipulated order dismissing the Caballero case, filed November 9, 2017, states that Navistar "shall be dismissed from this matter for lack of personal jurisdiction. This dismissal is without prejudice to [Caballero's] ability to refile claims against Navistar, Inc. in a forum outside of New Mexico that has personal jurisdiction over Navistar, Inc. and according to the rules and laws of that forum." *Id.*

Schmidt, who was appointed as the Personal Representative of Guerra's wrongful death estate on February 23, 2018, filed this lawsuit pursuant to the WDA on February 28, 2018, in the First Judicial District Court in Santa Fe, New Mexico. *Id.* Schmidt contends that Guerra suffered fatal injuries during the crash because the vehicle "violated several crashworthiness principles and . . . failed to protect him." *Id.* at ¶ 12. She brings the following claims against

Navistar: Count 1, Strict Products Liability; Count 3[1], Negligence, and Count 4, Breach of Implied Warranty of Merchantability. *See id.* Schmidt styles her claims for wrongful death damages and punitive damages as separate "counts." *Id.* Schmidt adequately served Navistar's registered agent in New Mexico. (Doc. 4) at 19-20 (return of service). Although there is substantial overlap between Schmidt's complaint and Caballero's complaint, including content and counsel, Caballero asserted in her lawsuit claims for her own pain and suffering, emotional distress, mental anguish, and loss of consortium. (Doc. 3) at 38. Caballero did not assert claims on behalf of Guerra or his estate, or on behalf of any other beneficiaries under the New Mexico Wrongful Death Act (WDA), NMSA 1978 § 41-2-1 *et seq.*

Navistar removed the case to federal court on April 5, 2018, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1). Schmidt resides in Santa Fe, New Mexico. (Doc. 4) at ¶ 1. Navistar is a Delaware corporation with its principal place of business in Illinois. (Doc. 1) at ¶ 3. Navistar appropriately asserts that the amount in controversy reasonably exceeds the jurisdictional threshold of $75,000.00. *Id.* at 2.

Navistar now moves to dismiss the case based on issue preclusion because Caballero stipulated that there is no personal jurisdiction over Navistar in New Mexico and, alternatively, on lack of personal jurisdiction. (Doc. 3).

II.  Discussion

   A. *Issue Preclusion*

   "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion,

---

[1] The Complaint does not contain a "Count 2."

which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion means that "a final judgment forecloses 'successive litigation of the very same claim, whether or not the relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 432 U.S. 742, 748 (2001)). Issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 432 U.S. at 748-49). By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these preclusion doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

"In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated [and subject to preclusion]. Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action." *Arizona v. California*, 530 U.S. 392, 414 (2000) (alterations in original) (quoting *Restatement (Second) of Judgments* § 27, comment *e*, at 257). Courts recognize that "[a] judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court." *Id.* at 415 (quoting *United States v. International Building Co.*, 345 U.S. 502, 505-06 (1953)). "But unless a showing is made that that was the case, the judgment has no greater dignity, so far as [issue preclusion] is concerned, than any judgment entered only as a compromise of the parties." *Id.* at 415-16 (quoting *International Building Co.*, 345 U.S. at 505-06).

4

"A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Taylor*, 553 U.S. at 892. The general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process," *Hansberry v. Lee*, 311 U.S. 32, 40 (1940), reflects the "deep-rooted historic tradition that everyone should have his own day in court," *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996). Here, Schmidt was not a party to the Caballero lawsuit.

Nevertheless, there are six exceptions to this general rule. *Taylor*, 553 U.S. at 893-95. Navistar contends that two exceptions apply to this case, specifically: 1) "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy"; and 2) "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who [wa]s a party to the suit." *Id.* (alterations in original) (quotations and citations omitted); (Doc. 3) at 4-5.

Navistar's argument rests on the premise that Caballero actually litigated the issue of personal jurisdiction over Navistar in her state case. However, the record is clear that Caballero "withdrew her opposition to [Navistar's motion to dismiss for lack of personal jurisdiction] and the court *entered an agreed order* granting Navistar's motion." (Doc. 3) at 2 (emphasis added).

Navistar submitted no evidence showing that the legal question of personal jurisdiction was determined by the state court through anything other than a consent judgment. As such, the stipulated order entered by the state court was not "actually litigated" and has no preclusive effect in this case.

Furthermore, Caballero brought only individual claims. She did not have standing to

5

bring wrongful death claims on behalf of Guerra's estate. Schmidt, as the personal representative, has standing to bring these wrongful death claims and has brought only claims on behalf of the estate. While the factual predicates to both lawsuits necessarily overlap, the claims are different. Caballero did not, and could not, represent Guerra's estate. Schmidt represents Guerra's estate, and not Caballero individually. As such, Navistar's two exceptions to the general rule that issue preclusion does not apply to a party not present in the initial lawsuit does not pertain to this case. Schmidt is, therefore, not bound by Caballero's stipulation.

The stipulated order in Caballero's case does not bind Schmidt and has no preclusive effect in this case.

    B. *Personal Jurisdiction*

"The validity of an order of a federal court depends upon that court's having jurisdiction over . . . the parties." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum, in this case, New Mexico, and by constitutional due process. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Circuit 2000). The personal jurisdiction requirement flows from the Due Process Clause and protects an individual's liberty interest. *Compagnie des Bauxites*, 456 U.S. at 702.

The plaintiff has the burden of establishing that personal jurisdiction exists. *See Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996). When a court decides a Rule "12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* showing of

personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

The plaintiff must show two things: "first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). New Mexico's long-arm statute, NMSA 1978 § 38-1-16, "is coextensive with constitutional limitations imposed by the Due Process Clause." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006); *see also Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 8, 132 N.M. 312. Personal jurisdiction over a nonresident defendant satisfies due process if there are sufficient "minimum contacts between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quotations omitted); *Intercon*, 205 F.3d at 1247. The "limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

"Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citing *Intercon*, 205 F.3d at 1247). "A person may submit to a State's authority in a number of ways. There is, of course, explicit consent." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (J. Kennedy, plurality). "The primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, --- U.S. ---, 137 S. Ct. 1773,

1779 (2017); *see World-Wide Volkswagen*, 444 U.S. at 294 ("[T]he Due Process Clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." (internal quotation marks and citations omitted)).

A foreign corporation's registration to do business or designate an agent in the forum state constitutes consent as determined by reference to the state statute governing such issues and case law construing those statutes. *See Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 216 (1921) ("Unless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere. . . ."). Indeed, the Supreme Court has held that "consent by registration" statutes passed constitutional muster under the Due Process Clause. *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.* 243 U.S. 93, 96 (1917).

And the Tenth Circuit historically has followed this practice. For example, in *Budde v. Kentron Hawaii, Ltd.*, the Court held under Colorado law that a foreign corporation's registration to do business in that state constituted consent to general personal jurisdiction. 565 F.2d 1145 (10th Cir. 1977). In so holding, the Court distinguished an earlier case filed by the same plaintiff in New Mexico in which the federal district court concluded it did not have general personal jurisdiction. *Id.* at 1148 (citing *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1036 (10th Cir. 1975)). The Tenth Circuit in *Kentron Hawaii* clarified that New Mexico law provided no authority for the exercise of general personal jurisdiction. *See id.* (stating that "result reached in the appeal from the judgment of dismissal by the federal district court in New

8

Mexico was dictated by a lack of New Mexico law on the particular matter"). The Court in *Kentron Hawaii* determined a different result because Colorado provided such authority. *Id.* ("We believe Colorado Law exists which dictates a result different from the one reached by us in the New Mexico case.").

Subsequent to the *Budde* decisions, the New Mexico Court of Appeals issued its decision in *Werner v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, 861 P.2d 270. In that case, the Court reviewed the New Mexico Business Corporation Act, § 53-17-1 *et seq.*, (NMBCA) and concluded that the legislature intended § 53-17-11 to grant authority for state courts to exercise personal jurisdiction over foreign corporations authorized to transact business in New Mexico. 1993-NMCA-112, ¶ 11, 861 P.2d at 273. In doing so, the court read § 53-17-11 in conjunction with § 53-17-2, which provides that a foreign corporation registered to do business in New Mexico "is subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character." The court reasoned that because the "legislative intent expressed in Section 57-13-2 appears to have been to equalize foreign and domestic corporations operating within New Mexico," a foreign corporation's act of registering to transact business in New Mexico constituted consent to New Mexico personal jurisdiction. *Werner*, 1993-NMCA-112, ¶ 10, 861 P.2 at 272-73.

*Werner* thus supplied the authority for New Mexico courts to exercise general personal jurisdiction over foreign corporations registered to transact business in New Mexico that the Tenth Circuit found lacking when it decided *Budde v. Ling-Temco-Vought, Inc.* nearly twenty years earlier. *Fireman's Fund Ins. Co. v. Thyssen Mining Construction of Canada, Ltd.*, 2011 WL 13085934, *3 (D.N.M. July 29, 2011) *vacated on other grounds by Fireman's Fund Ins. Co.*

9

*v. Thyssen Mining Construction of Canada, Ltd.*, 703 F.3d 488 (10th Cir. 2012). The court in *Fireman's Fund* explained that, post-*Werner*, "New Mexico case law appears to allow general personal jurisdiction over foreign corporations that are registered to do business within the state . . . and that are served through their agent for service of process within the state[.]" *Id.* at *2. The *Fireman's Fund* court applied New Mexico law and concluded that it could exercise general personal jurisdiction over a defendant who was registered to do business in New Mexico and whose registered agent was served with process in New Mexico. *Id.* at *3.

In the time since the *Werner* and *Fireman's Fund* cases were decided, the United States Supreme Court decided *Daimler AG v. Bauman*, 571 U.S. 117 (2014). *Daimler* heralded a narrowing of general personal jurisdiction and held that "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction" because "[t]hose affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." 571 U.S. at 137 (omission, alteration, internal quotation marks, and citations omitted). The Court explained the "exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping." *Id.* at 138 (internal quotation marks omitted). The Court further explained that "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 138-39 (quoting *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Court emphasizes that its holding did not rest on the quantity of in-forum contacts alone, explaining its holding was based

10

on "an appraisal of a corporation's activities in their entirety, nationwide and worldwide[.]" "[A] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 139 n.20. The *Daimler* Court "substantial[ly] curb[ed] the exercise of general jurisdiction" by limiting the types of contacts adequate to satisfy due process. *Bristol-Myers*, --- U.S. ---, 137 S. Ct. at 1784 (Sotomayor, J., dissenting).

As the New Mexico Court of Appeals noted in December 2018, *Daimler* neither cited *Pennsylvania Fire* nor addressed its holding. *Rodriguez v. Ford Motor Co.*, --- P.3d ---, 2018 WL 6716038, *5 (Dec. 20, 2018). *Daimler* does not address cases or situations in which a defendant or foreign corporation has consented to personal jurisdiction in the forum state. *Daimler*, 571 U.S. at 129 ("The Court's 1952 decision in *Perkins v. Benguet [Consolidated] Mining Co.*, [342 U.S. 437 (1952),] remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation *that has not consented to suit in the forum*." (emphasis added) (alteration, internal quotation marks, and citation omitted)). As a result, it has no bearing on the long-standing principle that a defendant may consent to such jurisdiction. Moreover, neither *Daimler* nor any other case has overruled *Pennsylvania Fire,* so it remains binding.

The New Mexico Court of Appeals also reaffirmed in *Rodriguez* that *Werner* constitutes good law and reaffirmed that a foreign corporation registered to transact business in New Mexico consents to general personal jurisdiction in the State. --- P.3d ---, 2018 WL 6716038, *7-11. That court followed *Werner* and held foreign corporations were on notice that "registration . . . and continued compliance with [the NMBCA's] reporting requirements[] indicates consent to

11

general jurisdiction." *Id.* at *9.

Notably, the NMBCA attempts to limit the circumstances under which a foreign corporation must register to transact business in New Mexico. NMSA 1978, § 53-17-1(A)-(K) (2001 Repl. Pamp.) (listing kinds of activities that do not constitute "transacting business" for purposes of registration requirements). Furthermore, the NMBCA specifically provides for the withdrawal of a foreign corporation should it no longer wish to "transact business," as that term is used in the Act. NMSA 1978, § 53-17-15 (2015 Cum. Supp.).

Navistar registered to transact business in New Mexico in 1966. It has continued to comply with the reporting requirements of the NMBCA since that time and has maintained a registered agent in this State. At no time did Navistar exercise its statutory option to withdraw from New Mexico.

Navistar cites cases outside of the Tenth Circuit, and outside of New Mexico, for the proposition that "consent by registration" statutes are unconstitutional. (Doc. 20) at 2-6. However, Navistar acknowledges that the Tenth Circuit has not addressed this issue in the context of *Daimler*. Navistar further acknowledges that the Circuits have split: the Third and Eighth Circuits have held that consent by registration statutes comport with due process requirements, while the First, Fourth, Fifth, Seventh, and Eleventh Circuits have held that these statutes violate due process. *Id.* at 3 nn. 1 and 2 (collecting cases).

While Navistar may be correct that consent by registration conflicts with the spirit of *Daimler*. Nevertheless, these statutes were specifically endorsed in *Pennsylvania Fire* and in the *Budde* cases as a constitutional means of exercising general personal jurisdiction over foreign corporations. It is even possible that the Tenth Circuit or the Supreme Court will at some point

deem consent by registration statutes, including the one in New Mexico, unconstitutional. But until that happens, a lower court should not, "on its own authority . . . take[] the step of renouncing [Supreme Court precedent]." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Id.*

This Court is bound to follow *Pennsylvania Fire* and *Werner*, and the conclusion is inexorable: Navistar consented to general personal jurisdiction in New Mexico by registering to transact business in New Mexico and by maintaining its registration under the NMBCA and consent by registrations remains constitutionally valid under *Pennsylvania Fire*.

III. Conclusion

The doctrine of issue preclusion does not apply to this case, and New Mexico's consent by registration statute remains valid and constitutionally sound. Navistar consented to general personal jurisdiction in New Mexico by registering to transact business in New Mexico. Accordingly, the Court has general personal jurisdiction over Navistar in this matter by virtue of Navistar's consent to the same, as described above.

IT IS, THEREFORE, ORDERED that Navistar's Amended Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3) is denied.

_____
UNITED STATES DISTRICT JUDGE