IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

D. MARIA SCHMIDT,

        Plaintiff,

  vs.                                                   Civ. No. 18-321 KG/JFR

NAVISTAR, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER
REGARDING DEFENDANT'S OBJECTION AND REQUEST TO STAY**

Before the Court is Defendant Navistar's Objection and Request to Stay, Doc. 93, upon remand from District Judge Kenneth Gonzales to consider new evidence from the parties that was not previously presented to the Court. Doc. 110. Specifically, the Court must determine (1) whether Defendant must produce the CAD files and FEA models as previously ordered, and (2) whether an additional protective order, as proposed by Defendant, is necessary if Defendant must produce the CAD files and FEA models. *Id.*

On August 24, 2020, the parties submitted additional briefing on the questions presented, which the Court received and reviewed. Docs. 114, 115. On August 28, 2020, the Court held a hearing to consider the parties' arguments. Having considered the parties' submissions, oral argument, and the relevant law, the Court finds Defendant's objection regarding the production of CAD files and FEA models is well taken and **SUSTAINED**.

**PROCEDURAL BACKGROUND**

This is a wrongful death case arising out of an accident that occurred in March 2015 when Ruben Guerra Guinones was driving a heavy commercial truck, lost control, and the

vehicle rolled over. Mr. Guinones died in the accident. Plaintiff D. Maria Schmidt, as personal representative of the wrongful death estate, brought suit against Defendant Navistar, Inc., the manufacturer of the truck, for strict products liability, negligence, and breach of implied warranty of merchantability. Doc. 4. Plaintiff alleges that fatal design flaws rendered the Subject Vehicle, a 2009 International 9200i commercial vehicle designed and manufactured by Defendant, not crashworthy.

### A. Agreed Protective Order

On November 12, 2019, the parties entered into an Agreed Protective Order, in which the parties aim to protect "proprietary and business information and/or trade secrets . . . ." Doc. 60. Generally, the parties stipulated that "Protected Documents" should not be disclosed or otherwise disseminated except under very specific procedures and only to specifically authorized individuals. Indeed, anyone who receives Protected Documents must sign an acknowledgement ("Exhibit A") agreeing that all Protected Documents and all information contained therein must be used solely for the prosecution of this litigation. *Id.* at 4. The parties also stipulated that the provisions of the Agreed Protective Order would remain binding on them even after the case is closed, and the parties agreed to return all Protected Documents to the disclosing party, or otherwise certify that such material had been destroyed. *Id.* at 6.

### B. Discovery Dispute and Court Order

The parties reached an impasse in their exchange of discovery as to several of Plaintiff's requests and, unable to resolve the dispute, on February 14, 2020, Plaintiff filed a motion to compel. Doc. 75. The dispute centered on Plaintiff's Requests for Production Nos. 3, 6, 8, 9, 11, and 13. Plaintiff generally argued that she needed the computer assisted design ("CAD") and finite element analysis ("FEA") models created by Defendant for the Subject Vehicle and other

vehicle models (regarding cab and cab roof structures) designed and sold by Defendant in order to assess crashworthiness principles and to determine whether the Subject Vehicle sold by Defendant and involved in the underlying crash failed to meet safety benchmarks and thereby played a role in the death of Mr. Guinones.

On March 23, 2020, the discovery dispute came before the Court for a hearing.  Doc. 86. Plaintiff clarified that she was seeking safer alternative designs that Defendant may have evaluated on other models of vehicles regarding cab roof strength and preventing crush and intrusion.[1]  Plaintiff indicated that in RFP No. 3, she was specifically seeking the testing records that address impact intrusion and crush.  *Id.* at 1.  Defendant resisted and contended that it was not clear from Plaintiff's request that Plaintiff was seeking information beyond the vehicle and cab at issue.  *Id.*  Defendant further contended that whether Plaintiff's claim is viewed from the perspective of notice or safer alternative design, that Plaintiff had failed to meet her burden demonstrating that other models are substantially similar to the design model at issue here to support her requested production, as she was required to do.  *Id.* at 2.  Defendant explained that it had provided the Court with affidavits and real evidence that demonstrated that looking at the geometry and the materials making up other cab models are entirely different from the one at issue here and therefore not relevant.  *Id.*  Nevertheless, Defendant indicated that it had produced testing information regarding the entire 9000i series as it relates to the 72" high rise cab, the cab restraint system and cab structure.  *Id.*  Regarding RFP No. 8, Plaintiff stated that she was seeking Navistar's CAD and FEA files for the "vehicle model at issue, similar model vehicle, or any vehicle that incorporates a similar structure or restraint system as the vehicle model in

---

[1] During the hearing, Plaintiff indicated that the parties had resolved their dispute regarding RFP Nos. 6, 9, 11, and 13.  Doc. 86.

question." *See* Doc. 75-1, at 6. Plaintiff argued that these files are necessary to evaluate structural integrity and design features of the Subject Vehicle's cab and cab roof. Doc. 86 at 2. Defendant opposed this request and asserted that the CAD and FEA files are Defendant's most highly valued trade secrets, and that very few Navistar employees even have access to these materials. *Id.* Defendant further asserted that the Agreed Protective Order was insufficient to adequately protect the information being sought. *Id.* Lastly, Defendant asserted that Plaintiff had not demonstrated that her need for this material outweighed the proprietary nature of the information and Defendant's strong interest in its confidentiality. *Id.* Defendant stated that it had produced "drawings for the driver seat, seatbelt tethers, cab, roof, and glazing of the vehicle at issue, and the corporate engineering specifications identified in the drawings." Doc. 75-1 at 6. In response, Plaintiff stated that she was prepared to submit an affidavit from her expert demonstrating why Navistar's CAD and FEA files are relevant and necessary to address her stated needs.

The Court ruled that Defendant must disclose materials in response to RFP Nos. 3 and 8. The Court acknowledged case law where courts have ruled that trade secrets did not have to be produced regardless of a protective order in place, but the Court found that Navistar's CAD and FEA files were relevant to Plaintiff's claims and that the Agreed Protective Order was sufficient to protect the information contained in the materials to be produced. Doc. 86 at 2. With respect to RFP No. 3 and based upon Defendant's statement that it already produced much responsive materials,[2] the Court ordered Defendant to produce "all materials, including any and all testing,

---

[2] Defendant responded to Plaintiff's RFP No. 3 stating "Upon entry of an agreed upon protective order, Navistar will produce test results relating to SAE J2422 and FMVSS 205, 206, 207, 209, and 210 which relate to the vehicle at issue." Doc. 75-1 at 4. At the hearing, Defendant informed the Court that it had produced information, including testing information, regarding the entire 9000i series as it relates to the 72" high rise cab, so beyond the truck at issue, *i.e.,* 2000 pages of material related to the 72" high rise cab, the cab restraint system and cab structure, detailed specifications, and drawings, etc. Doc. 86 at 2.
.

4

regarding the 72" high rise cab and the entire 9000i series of vehicle, to the extent it [Defendant] has not already produced everything that is being requested". Doc. 87 at 1. Regarding RFP No. 8, the Court found that the Defendant had sufficiently demonstrated that Navistar's CAD and FEA files are trade secret and that their disclosure might be harmful, but that Plaintiff had established relevancy and necessity. Doc. 86 at 2. The Court further found that the Agreed Protective Order offered appropriate protection to ensure the confidentiality of the materials. *Id.* Accordingly, the Court ordered that "Defendant will produce the CAD and FEA files for the 9000i series of vehicles that pertain to cab structure and cab roof structure." Doc. 87 at 2. Defendant was ordered to produce the materials within 30 days. *Id.*

### C.     **Defendant's Appeal to the District Judge**

On April 6, 2020, Defendant filed its objection to the Court's discovery order, and requested District Judge Kenneth Gonzales to stay the order pending hearing and determination of its objection. Doc. 93. Defendant attached to its objection the affidavits of Richard Mink and Roy Zeitlow, individuals who are employed by Navistar and who appear to be expert witnesses for Defendant.[3] Doc. 93-1. On April 10, 2020, Judge Gonzales stayed Defendant's time to comply with the Order Regarding Plaintiffs Motion to Compel (Doc. 87) pending the Court's decision on the Objection. Doc. 94. On April 24, 2020, Plaintiff responded and attached an affidavit by Toby Kim Parnell. Docs. 96, 96-1. On May 8, 2020, Defendant filed its reply, and attached another affidavit by Mr. Mink, this one slightly amended to respond to the Parnell affidavit, and affidavits by Ray Baggett and Richard Ho, employees of Navistar. Docs. 101,

---

[3] Defendant previously attached the Mink Affidavit to its Response to Plaintiff's Motion to Compel, Doc. 76, which appears to be identical to the affidavit attached to its objection to the Court's discovery order. Compare Doc. 76-1 with Doc. Doc. 93-1. Similarly, Defendant also attached the Zeitlow Affidavit which was previously submitted to the Court. Compare Docs. 76-2 with 93-2.

101-1, 101-2, 101-3.  Thus, before Judge Gonzales were a total of five affidavits, four of which presented new evidence.  These affidavits are summarized as follows:

> • <u>ZEITLOW AFFIDAVIT</u>:  Mr. Zeitlow is a Senior Product Integrity Engineer for Navistar and states that he spent approximately 60 hours collecting documents in response to Plaintiff's request for production, and that it would take another 60 hours to collect analogous documents on each 9000i series model equipped with one of four cab styles that are different from the 72" high rise model.  Doc. 93-2 at 1.  Between 1999-2009, Navistar produced at least 17 different vehicle series, each having more than one model and each model having up to six cab/cab roof combinations.  *Id.* at 2.
> Mr. Zeitlow states that the CAD and FEA files are extraordinarily sensitive propriety information and the most valuable competitive data possessed by Navistar.  *Id.*  He states that the CAD and FEA files have never been produced outside of Navistar.  *Id.*  Mr. Zeitlow states that it would take thousands of hours to gather the CAD and FEA files for all of the cab and cab-roof combinations manufactured between 1999-2009.  *Id.* at 2-3.  Mr. Zeitlow attests that the release of Navistar's proprietary information would irreparably damage Navistar's competitive advantage and property rights because it could be used by Navistar competitors to develop tooling and manufacture competitive products in a more cost effective manner, and could be used by counterfeiters to produce "knock-offs" of replacement parts.  *Id.* at 2.
>
> • <u>PARNELL AFFIDAVIT</u>:  Dr. Parnell, who holds a Ph.D. in mechanical engineering, submitted a lengthy affidavit (18 pages, apart from his CV).  Doc. 96-1.  Dr. Parnell has been retained by Plaintiff as an expert to identify and address any design deficiencies involving the subject 2009 Navistar 9200i Hi-Rise vehicle.  *Id.* at 7.  Dr. Parnell states that Navistar's claim that the roof, seat, and restraint system drawings and data it has produced are sufficient for evaluation by Plaintiff "is false and deceptive."  *Id.*  Dr. Parnell also states that Defendant's production of two-dimensional PDFs with its assertion that they provide all the information necessary for him to create three-dimensional CAD models, while refusing to produce its own CAD models, is inherently contradictory to Navistar's trade secret concerns.  *Id.* at 9-10.  Dr. Parnell states that complete models of the cab and vehicle frame associated with the subject vehicle are essential for proper structural analysis and validation.  *Id.* at 11.  Dr. Parnell states that complete CAD and FEA models will allow for validation of the as-built Navistar 9200i vehicle in this accident and simulation of the accident consistent with any analysis performed by Defendant.  *Id.* at 12-13.  Dr. Parnell asserts that Defendant should produce all FMEA (Failure Modes and Effects Analysis) studies associated with the 9200i model vehicle.  *Id.* at 15.  Dr. Parnell also asserts that Defendant should produce alternative designs, even those without shared or similar component parts, to allow Plaintiff to evaluate the relative crashworthiness as compared to the subject Navistar 9200i.  *Id.* at 16.  Dr. Parnell states that creating three-dimensional CAD models from two-dimensional PDFs is a very lengthy and time-consuming process, and that production of the CAD and FEA models will streamline the litigation process.  *Id.* at 10, 14.  Dr. Parnell states that he is at a distinct disadvantage without the CAD and FEA

models because Defendant and its technical staff have unlimited access to their entire body of engineering which he does not. *Id.* at 18.

• MINK AFFIDAVIT (Amended): Mr. Mink, a Mechanical Engineer employed by Navistar, is familiar with the cab/cab roof structures of the 9000i series and is familiar with the discovery Navistar produced in response to Plaintiff's RFPs. Doc. 101-1. Mr. Mink states that Navistar provided Plaintiff with 355 pages of detailed engineering drawings pertaining to the subject vehicle's cab structure, cab roof structure, driver's seat and occupant restraints. *Id.* at 2. Mr. Mink disputes Dr. Parnell's statement that the drawings failed to provide applicable views. *Id.* Mr. Mink states that the produced drawings include "a front view, a left side view, a top view, an isometric view, and cross-sectional views at 6 different locations along the length of the A-Pillar." *Id.* He goes on to state that

> [c]omplex curves are depicted to scale, and the views include explicit, numerical dimensions between various points on the panel. The drawing also has dimensional grids superimposed on the various views so that panel as a whole and various features of the panel can be located in 3 dimensions relative to the global cab structure. The drawing identifies the specific material and the thickness of the material from which the panel is made. Finally, the drawing identifies changes made to the panel since it was originally designed.

*Id.* Mr. Mink also explained that Navistar is equally concerned about the proprietary nature of its engineering drawings and various other documents it produced and did not produce them until Plaintiff agreed to a protective order. *Id.* at 3. Mr. Mink stated, however, that one key difference between the drawings and the CAD models is that drawings cannot be readily entered into computer-controlled machine tools or 3D printers to create counterfeit parts, whereas CAD models can. *Id.* While Navistar is not concerned that Plaintiff will create counterfeit parts, it is concerned that models could be stolen or otherwise inadvertently released or obtained. *Id.* Mr. Mink states that FEA models are similarly sensitive in that the underlying CAD models can be extracted from them. *Id.* Mr. Mink disputes Dr. Parnell's suggestion that Navistar did not provide Plaintiff with material specifications and states that Navistar produced five different material specifications covering various steels, aluminum alloys and fiberglass from which the subject cab structure and subject cab roof structure were made. *Id.* at 3. Finally, Mr. Mink states that Navistar has already provided Plaintiff with the FEMA studies referenced in Dr. Parnell's affidavit. Id. at 4

• BAGGETT AFFIDAVIT: Mr. Baggett is Chief Engineer, Cab in White, for Defendant Navistar. Doc. 101-2 at 1. Mr. Baggett has first-hand knowledge of the CAD and FEA models maintained by Navistar and of the process Navistar uses to design its heavy trucks. *Id.* at 2. Mr. Baggett states that the CAD and FEA files are generally stored and guarded behind firewalls and passwords at Navistar headquarters, and that other parts suppliers' models are also guarded there. *Id.* at 7. Mr. Baggett states that very few people have access to the CAD and FEA files, and that any engineering contractor or

supplier who views these files must sign a non-disclosure and confidentiality order under their contractual agreements before being permitted to do so. *Id.* at 8. Mr. Baggett states that the CAD and FEA models are used to select suppliers, validate components, purchase tooling, and guide the Navistar manufacturing facilities in building Navistar's products. *Id.* at 3. He states that the models contain installation drawings and other documents related to the assembly of components in the Navistar manufacturing facility. *Id*. Mr. Baggett states that if a competitor were to gain access to this information it could develop tooling and manufacture Navistar-like vehicles and could eliminate Navistar's competitive advantage related to the unique and proprietary aerodynamic design of its cabs. *Id*. Mr. Baggett states that the release of the CAD and FEA models would allow competitors to gain insight into its design methodology, strategy and development. *Id.* at 4. Finally, Mr. Baggett states that

> [t]he vehicle key dimensions, measurements, and related material specifications concerning the 9000i series cabs are all contained within the hard copy design documents. This information is enough to perform any modeling regarding the structural strength or crashworthiness of the 9000i series cabs. Any additional information purportedly needed to otherwise analyze the structural strength or crashworthiness of the 9000i series cabs could be gained through an examination and testing of an exemplar cab without the release of Navistar's proprietary CAD and FEA models.

*Id.* at 7.

• HO AFFIDAVIT: Mr. Ho is the Information Security Director and Chief Information Security Officer for Navistar. Doc. 101-3. Mr. Ho states that Navistar is very serious about cybersecurity and data protection; that Navistar has implemented physical access and systems access controls at each of its facilities; that highly privileged information can only be viewed at Navistar sites; and that Navistar has achieved a very high security rating, one of the highest in the industry. *Id.*

**D.      Judge Gonzales's Memorandum Opinion and Order**

On June 20, 2020, District Judge Gonzales entered a Memorandum Opinion and Order regarding Defendant's Objection and Request to Stay. Doc. 110. Therein, Judge Gonzales denied holding an evidentiary hearing and, having already stayed compliance with the Court's discovery order, declined to rule on the merits of Defendant's Objection given the new evidence. *Id.* Judge Gonzales observed that Rule 72(a) "does not authorize a district court to consider new evidence when reviewing a magistrate's decision on a pretrial non-dispositive order." Fed. R. Civ. P. 72(a); see Doc. 110, at 3, citing *In the Matter of Search of Info. Associated with Email*

8

*Addresses Stored at Premises Controlled by the Microsoft Corp.*, 212 F. Supp. 3d 1023, 1038 (D. Kan. 2016) (other citations omitted).  As such, Judge Gonzales remanded the matter to this Court for further consideration in light of new evidence presented by the parties.

      **E.**      **July 23, 2020, Status Conference**

On July 23, 2020, the Court held a status conference and discussed with the parties Judge Gonzales's Memorandum Opinion and Order.  Doc. 111.  Having heard from the parties, the Court ordered that by no later than August 21, 2020, the parties could each depose one expert witness, limited to four hours, to address any issues relevant and necessary to the Court's proceeding on the question of whether Defendant must produce the CAD files and FEA models, including whether an additional protective order is necessary if Defendant were ordered to do so.  *Id.*  The Court also ordered that by August 24, 2020, the parties could submit supplemental briefing based on the expert witness depositions.  *Id.*  The Court scheduled a discovery hearing on the matter for August 28, 2020.  *Id.*

      **F.**      **August 24, 2020, Briefing**

The parties separately filed briefs regarding whether Defendant must produce its CAD files and FEA models.  Docs. 114, 115.

Plaintiff submits that the Court properly granted her motion to compel, as Rule 26 of the Federal Rules of Civil Procedure allows for discovery based on a broad definition of relevancy.  Doc. 114 at 3-4.  Plaintiff asserts that the Defendant's CAD and FEA data is relevant, as it will allow Plaintiff to demonstrate that Defendant's truck "created an unreasonable risk of injury, as well as Defendant's knowledge of the risk of its defective product."  Doc. 114 at 4.  Plaintiff claims that her deposition of Defendant's expert witness shows that the information Defendant seeks to shield is not as sensitive or so highly restricted as Defendant claims; indeed, the expert

9

witness admits that as many as 220 Navistar employees could access the CAD and FEA data, not only at the office but also from remote locations. Doc. 114, at 4-5. Plaintiff states that the existing protective order provides adequate safeguards to protect Defendant's proprietary information and argues that the additional conditions suggested by Defendant are not necessary and would impose undue burdens on Plaintiff. Doc. 114 at 9-10.

Defendant attacks Plaintiff's assertion of necessity and relevance and argues that the testimony of Plaintiff's witness shows that the production by Defendant of its CAD and FEA data is not necessary, as the witness stated that he could conduct his analysis without the data. Doc. 115 at 3. Defendant submits that Plaintiff's witness admitted that Navistar did not produce CAD files and FEA models in the three cases involving Navistar on which the witness previously worked, a fact that "devastates Plaintiff's claim that these documents are necessary and essential." Doc. 115 at 10. Defendant also faults the witness for not being able to identify a single case where a litigant produced CAD files and FEA models, Doc. 115 at 10-13, and states that Plaintiff has not established that it would be unduly burdensome for her to create her own CAD files and FEA models from the 2D drawings already produced in discovery. Doc. 115 at 13-18. Finally, Defendant claims that the existing protective order does not provide sufficient protection for Defendant, and that if the Court orders Defendant to disclose CAD files and/or FEA models, it should impose stronger protections over the use of this material. Doc. 115, at 19-20.

      **G.**     **The August 28, 2020, Hearing on Remand**

On August 28, 2020, this Court held a discovery hearing to address the issue of whether Defendant must produce the CAD files and FEA models, including whether an additional

protective order, as proposed by Defendant, is necessary if Defendant were ordered to do so. Doc. 116.

Plaintiff argued that the Court should uphold its prior order in which it determined that the CAD files and FEA models for the vehicle model series at issue in this matter are relevant and should be produced, and that the confidentiality order in place is sufficient to protect the confidential and proprietary nature of the information.  *Id.* at 2.  Plaintiff argued that the discovery sought is relevant because the electronic files showing the design and the performance of the truck cab at issue in this case, and similar cabs, go directly to Plaintiff's burden of proof for the jury, *i.e.,* was this cab unreasonably dangerous and were there safer alternative designs available that would have avoided Mr. Guinones's death in the rollover accident.  *Id.*  Plaintiff argued that although Defendant produced two-dimensional files of the subject (and related) vehicles, that requires Plaintiff's expert to create the three-dimensional CAD and FEA files that Defendant already has in its possession.  *Id.*  Plaintiff further argued that Defendant had failed to demonstrate how producing the three-dimensional CAD and FEA files in the first instance presented a greater harm than producing the two-dimensional files from which three-dimensional files can be created.  *Id.*   Plaintiff conceded that the information sought is trade secret information and that its disclosure might be harmful to Defendant.  *Id.*  Plaintiff argued, however, that it was up to the Court to balance Plaintiff's need for the files for the full and fair presentation of his case against Defendant's claims for potential harm from disclosure.  *Id.* Plaintiff also conceded that while Dr. Parnell can give an opinion without the files, Dr. Parnell is at a significant disadvantage if required to do so.  *Id.*  Finally, Mr. Kaufman argued that the current protective order in place is sufficient and does not need to be more restrictive.  *Id.*

11

Defendant argued that it has never produced its CAD and FEA files in the course of litigation, and that it is typical in these cases to produce two-dimensional alternative designs, as opposed to the CAD and FEA files, which Defendant has done here. *Id.* at 3. Defendant argued that the burden of converting two-dimensional drawings to three-dimensional drawings is minimal and that "they do it all the time." *Id.* Defendant argued that Dr. Parnell testified that the files were not necessary for him to form an opinion, and that Dr. Parnell could not identify any other case in which he provided expert testimony where the CAD files and FEA models had been produced. *Id.* As to the protective order, Defendant argued that when it entered into the Agreed Protective Order, it did not contemplate producing CAD files and FEA models because Defendant has never done that before. *Id.* Thus, because the CAD files and FEA models are the most valuable intellectual property Defendant has, if they were ordered to be produced, Defendant wants a protective order that it uses in patent-related cases. *Id*.

The Court advised the parties that it would take their oral argument and all of the materials submitted under advisement. *Id.* at 4.

## RELEVANT LAW

**A.     Reconsideration**

While the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, Rule 54(b) provides that any order or decision "that adjudicates fewer than all claims ... may be revised at any time before the entry of a judgment adjudicating" all claims. Fed. R. Civ. P. 54(b). In this District, Rule 54(b) has been interpreted to provide the reviewing court the discretion to "select the standard of review for a motion to reconsider an interlocutory order." *Kruskal v. Martinez*, 429 F. Supp. 3d 1012, 1024 (D.N.M. 2019). For its part, the Tenth Circuit has found instructive the standard used to review a motion made under Rule 59(e). *See*

*Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (unpublished).  In the Rule 59(e) context, there are three circumstances in which granting a motion to reconsider is appropriate; first, where there is an intervening change in the controlling law; second, when there is new evidence that was previously unavailable; and third, where there is a need to correct clear error or prevent manifest injustice. *Id.* (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

A motion to reconsider is also appropriate "where the court has misapprehended the facts, a party's position, or the controlling law," but such motions are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in a prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012. "Absent extraordinary circumstances, ... the basis for the second motion must not have been available at the time the first motion was filed." *Id.; see also Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 n. 2 (10th Cir. 2001) (holding that a court, in reviewing a motion to reconsider, need not address new arguments raised by the parties); *United States v. Castillo-Garcia*, 117 F.3d 1179, 1197 (10th Cir. 1997) (emphasizing that "arguments raised for the first time in a motion for reconsideration are not properly before the court and generally need not be addressed").

### B.  Discovery of Trade Secrets

"(T)here is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981), quoting *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979).  Under Fed. R. Civ. P. 26(c)(1)(G), a court may, for good cause, issue a protective order (or permit a party to avail itself of an already issued protective order) to require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

13

*In re Cooper Tire & Rubber, Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).  Under this Rule, a party seeking that its information only be revealed in a certain way, such as limiting who can view or access the materials, "must first establish that the information sought is a trade secret [or other confidential research, development, or commercial information]."  *Id.* at 1190; Fed. R. Civ. P. 26(c)(1)(G).  Further, that party must additionally "demonstrate that its disclosure might be harmful."  *In re Cooper Tire*, 568 F.3d at 1190 (quoting *Centurion*, 665 F.2d at 325).  To establish the requisite harm, the party seeking protection must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *E.g., Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 245 (D. Kan. 2010), quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

Once the party seeking protection for its trade secrets has met its initial burden—to show that the materials constitute trade secrets and disclosure of them might cause harm—the burden then shifts to the party seeking disclosure to establish that such disclosure is "relevant and necessary to the action."  *Centurion*, 665 F.2d at 325.

> The need for the trade secrets should be balanced against the claim of harm resulting from the disclosure.  "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure."  If the party seeking discovery cannot prove that the information is relevant and necessary, then discovery should be denied.  However, if the party meets its burden, "the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing."

*In re Cooper Tire*, 568 F.3d at 1190 (internal citations omitted) (quoting *Centurion*, 665 F.2d at 325, 326).  And if the party seeking disclosure establishes relevance and need, the Court can fashion reasonable protections to guard against unauthorized disclosure of trade secrets while taking care to not improperly limit the other party's use of that information in its case.

14

> Where the protection sought is only to prevent certain identified individuals from viewing the materials, such as in-house counsel or the patent inventor, the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action.

*Layne Christensen*, 271 F.R.D. at 249.

Finally, it is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion. *Centurion*, 665 F.2d at 326 (citations omitted).

## **ANALYSIS**

In the present case, the parties do not dispute that Navistar's CAD files and FEA models are trade secret and that their disclosure would be harmful to Defendant's interest in the property. Indeed, affidavit testimony supports that Navistar's CAD files and FEA models contain information that Navistar has spent many years and millions of dollars developing, and that if this information were to fall into the wrong hands, Navistar could lose its competitive advantage in the marketplace and be seriously harmed economically. Docs. 93-2, 101-1, 101-2, 101-3. Mr. Zeitlow stated that the CAD files and FEA models are the most valuable competitive data possessed by Navistar and have never been produced outside of Navistar. Doc. 93-2 at 2. Mr. Mink expressed concern that Navistar's trade secrets could be exploited by competitors to produce counterfeit parts. Doc. 101-1 at 3. Mr. Baggett asserted that Navistar has invested considerable resources into the CAD files and FEA models, that the release of those files and models would give competitors the ability to steal market share and gain competitive advantage unfairly, and that these models are zealously guarded. Doc. 101-2 at 4-5, 7. Moreover, for its

part, nothing in the Parnell Affidavit serves to demonstrate that the material at issue is anything other than a trade secret. Thus, the Court is convinced that the CAD files and FEA models represent trade secrets within the meaning of Rule 26(c)(1)(G), and that the unchecked disclosure of this information would be harmful to Navistar's financial well-being and standing in the marketplace.

Based on this finding, the burden then shifts to Plaintiff to show that the information sought is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740-41 (Fed. Cir. 1987); *Centurion Indus. Inc.,* 665 F.2d at 325. Plaintiff's complaint, removed from state court, makes claims for wrongful death and punitive damages based on alleged violations of recognized crashworthiness principles by the Subject Vehicle manufactured and marketed by Defendant and being driven by Mr. Guinones at the time of the roll-over accident. Plaintiff alleges strict products liability against Defendant, stating that the "injuries complained of herein occurred because the vehicle in question was not reasonably crashworthy and, thereby, created an unreasonable risk of injury and harm." Doc. 4 at 4. Plaintiff sets forth a number of conditions that she claims demonstrate that the vehicle was defective. *Id*. at 4-5. Additionally, Plaintiff claims that Defendant was negligent in its design and manufacture of the vehicle, in that Defendant "either used or knew about advanced safety features used in Europe, Australia, Japan and other countries and chose not to offer those safety features to American consumers." *Id.* at 6. Plaintiff avers that Defendant has exclusive possession of and controls technical materials and other documents regarding the design, manufacture and testing of the Subject Vehicle, as well as materials related to engineering analysis it performed. *Id.* at 7. Plaintiff alleges that Defendant breached its duties to use ordinary care, to inspect, repair and replace, and was thereby negligent in a number of ways,

including allegedly using substandard materials during the manufacture of the vehicle, and by allegedly failing to implement adequate quality control during the manufacture of the vehicle. *Id.* at 8-9.  Plaintiff, therefore, seeks Navistar's CAD files and FEA models for the Subject Vehicle, similar model vehicle, or any vehicle that incorporates a similar structure or restraint system as the vehicle model in question, in order to prove Defendant's negligence and that its product was defective.

Having considered the additional and new evidence submitted by the parties, and acting under its inherent authority to reconsider its previous rulings, the Court finds that while information regarding the engineering, design, and testing documents for the Subject Vehicle is relevant to the subject matter of this lawsuit, the Court is now persuaded that Plaintiff has failed to demonstrate that Navistar's CAD files and FEA models are necessary for developing her case. Here, Defendant has produced engineering, design, and testing documents responsive to Plaintiff's requests, along with material specifications and two-dimensional engineering drawings detailing the geometries and construction techniques of the components, subassemblies, and assemblies that comprise the Subject Vehicle.[4]  Dc. 93-1 at 3.  The Court, therefore, is persuaded that Defendant has produced the substantial equivalent of the relevant information Plaintiff seeks without having to reveal trade secret information.  Further, affidavit testimony supports that Plaintiff's expert can use the two-dimensional drawings Navistar produced to create its own CAD files and FEA models that Plaintiff argues are necessary for

---

[4] Mr. Mink attested that material specifications, engineering drawings and physical testing documents produced are not limited to only the Subject Vehicle, but that they "apply equally to any International 9000i Series truck or truck tractor equipped with a 72-inch Hi-Rise sleeper cab of any model – 9200i, 9400i, 9900i or 9900ix – axle configuration (4x2 or 6x4), or model year since the 9000i's introduction in July 1999."  Doc. 93-1 at 3.  Mr. Mink further attested that the Subject Cab roof structure is unique to 9000i Series trucks and truck tractors when equipped with a 72-inch Hi-Rise sleeper cab, and that the Subject Cab roof structure is not "utilized" on other model vehicles.  *Id.*

17

evaluating the structural integrity of the Subject Vehicle and determining whether it created an unreasonable risk of injury.  Doc. 93-1 at 2-3, Doc. 96-1 at 10, 101-2 at 7.  Moreover, Plaintiff's expert witness, Dr. Parnell, testified that having Navistar's CAD files and FEA models would make his job easier and reduce the number of hours he would have to spend creating his own, but that he can create his own and is able to render expert testimony without Navistar's CAD files and FEA models.  Docs. 115-1 at 9, 23, 53.  Indeed, Dr. Parnell testified that he has not had CAD files or FEA models from a manufacturer in the majority of his crashworthiness vehicle cases in which he has provided expert opinion testimony.[5]  *Id.* at 113-14.  In sum, in light of the new evidence, Plaintiff has failed to demonstrate that Navistar's CAD files and FEA models are necessary to her case.

      **IT IS THEREFORE ORDERED** that Defendant's objection to the Court's Order to produce the "CAD and FEA files for the 9000i series of vehicles that pertain to cab structure and cab roof structure" is **SUSTAINED**;

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (Doc. 75) as to Request for Production No. 8 is **DENIED**.

                                                  */s/ John F. Robbenhaar*
                                                  JOHN F. ROBBENHAAR
                                                  United States Magistrate Judge

---

[5] Additionally, when asked, Dr. Parnell was not able to recall Navistar ever producing CAD files and FEA models in other Navistar-related cases in which he had provided expert testimony.  Doc. 115-1 at 94.